UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL HENDERSON, <br>     *Plaintiff,* <br>       *v.* <br> JIM ANDERSON & CITY OF MERIDEN, <br>     *Defendants.* | Civil No. 3:12cv1716 (JBA) <br><br><br> March 11, 2014 |

**ORDER ON DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS**

Defendants Jim Anderson and the City of Meriden (the "City") move [Doc. # 23] for judgment on the pleadings on pro se Plaintiff Daniel Henderson's Complaint [Doc. # 1], which he originally filed in state court and Defendants removed to this Court, alleging common-law negligence and deprivation of rights under 42 U.S.C. § 1983.  The allegations in the Complaint arise from damage to Plaintiff's property caused by excavation work performed at an adjoining property pursuant to a permit issued by Defendants.  For the reasons that follow, Defendants' motion will be granted as to the § 1983 claims, and the remaining claim will be remanded to state court.

I.      **Facts**

According to the Complaint, Plaintiff is the owner[1] of real property located at 1843 North Broad Street in Meriden, Connecticut.  (Compl. ¶ 3.)  On January 7, 2009,

---

[1] Plaintiff has filed six suits against Michael and Vicki Lagoudis, the owners of 1835 North Broad Street, relating to this incident.  The first five suits were filed in state court and dismissed or withdrawn.  On February 28, 2014, this Court dismissed Plaintiff's sixth suit on the grounds of issue preclusion, holding that the determination in at least two of the prior state court actions that he lacked standing because he was not the owner of 1843 North Broad Street precluded relitigation of this same issue in federal court.  *See Henderson v. Lagoudis, et al.*, No. 12cv1668 (JBA) (D. Conn. Feb. 28, 2014), Ruling

Defendant Anderson, the Zoning Enforcement Officer for the Defendant City, approved an "erosion control plan," allowing excavation to occur at 1835 North Broad Street in Meriden.  (*Id.* ¶ 2.)  On January 10, 2009, members of Plaintiff's family notified Defendant Anderson that the excavation work at 1835 North Broad Street was encroaching into Plaintiff's adjoining property.  (*Id.* ¶ 4.)  Defendant Anderson visited 1835 North Broad Street and then reported to Donald and Genieve Henderson that he had ordered the excavation work to be stopped.  (*Id.* ¶ 5.)  Days later, however, work resumed at 1835 North Broad Street and continued for weeks afterwards, causing additional injury and damages to Plaintiff's property.  (*Id.*)  Plaintiff alleges that Defendants had a duty to order that work be stopped at 1835 North Broad Street upon discovering that the excavation was encroaching Plaintiff's adjoining property.  (*Id.* ¶ 6.)  Defendants' actions are alleged to constitute negligence, "reckless disregard for safety," and deliberate indifferent to Plaintiff's property rights.  (*Id.* ¶¶ 8–9.)

---

Granting Defendants' Motion to Dismiss [Doc. # 23] ("*Lagoudis* Motion to Dismiss Ruling") at 6.

II.      **Discussion**[2]

Defendants move for judgment on the pleadings on the grounds that (1) Plaintiff's negligence and § 1983 claims are barred by the statute of limitations, (2) Defendant Anderson is entitled to qualified immunity, (3) Defendants are entitled to governmental immunity, and (4) Plaintiff's claim against the City pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978) fails as a matter of law, because Plaintiff has not shown that any alleged deprivation of a constitutional right was the result of a municipal policy. (Defs.' Mem. Supp. [Doc. # 23-1] at 7–14.)

A.      **§ 1983 Claim**

1.      *Statute of Limitations*

As a threshold matter, Defendant argues that Plaintiff's claims should be dismissed under the three-year statute of limitations applicable to § 1983 claims. (Defs.' Mem. Supp. at 9.)  The Complaint alleges that Defendant Anderson was notified about the encroachment onto Plaintiff's property "[o]n or about" January 10, 2009, and at an unspecified point he later visited the property and ordered work stopped.  (Compl. ¶ 4.) The basis for the § 1983 claim is Defendant Anderson's subsequent failure to ensure

---

[2] "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim. In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted).  "To survive" either motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Conclusory allegations are not sufficient.  *Id.* at 678–79.

enforcement of the stop-work order.  (*Id.* ¶ 8.)  Plaintiff's Complaint was filed at the earliest on October 24, 2012.[3]  From the Complaint, however, it is unclear exactly when Defendant Anderson visited the property and failed to prevent Plaintiff's property from being encroached upon.  In his memorandum of law, Plaintiff contends that Defendant Anderson was first put on notice of the encroachment in January 2010, not January 2009.  (Pl.'s Opp'n [Doc. # 24] at 2.)  Plaintiff cannot amend his Complaint with assertions in a memorandum of law and the Court had given Plaintiff until March 7, 2013 to file an amended complaint (*see* Scheduling Order [Doc. # 21]) to plead facts showing that his claims were not barred by the statute of limitations, and he did not do so.  The Court nevertheless declines to dismiss Plaintiff's pro se Complaint on the basis of the statute of limitations at this stage, because before summary judgment "in the statute of limitations context . . . dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) ("Were we reviewing a summary judgment motion, we would have more facts before us to indicate what sort of 'inaction' the Police Department engaged in and when [and whether the 'continuing violation' exception to the statute of limitations applied]. But for now we must construe Harris' Amended Complaint liberally.").

---

[3] The Complaint is dated October 24, 2012, but Defendants contend that Plaintiff's Complaint was not filed in state court until December 26, 2012.  (Def.'s Mem. Supp. at 1.)  It appears that Defendants were served with the Complaint before this date, because they removed the case to this Court on December 7, 2012 and the state court Civil Summons indicates that it was received by the City on November 16, 2012.  (*See* Notice of Removal [Doc. # 1] at 4).

2.      *Qualified Immunity*

In order to serve its purpose, the availability of qualified immunity should be decided "at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). When a defendant raises the defense of qualified immunity on a motion to dismiss rather than a motion for summary judgment, the defendant "must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004). Moreover, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

Government officials are immune from liability for civil damages when their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The two-pronged qualified-immunity inquiry asks whether "the facts alleged show the officer's conduct violated a constitutional right," and if so, "whether the right was clearly established," such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 201–02 (2001) (internal citations omitted). The analysis may take place in any order "in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 237.

Plaintiff alleges that Defendant Anderson's failure to stop the encroachment onto his land "constitutes negligence" and demonstrates "a reckless disregard for . . . safety [and] deliberate indifference to Plaintiff's property [] rights." (Compl. ¶ 8.) Construing Plaintiff's pro se Cmplaint liberally, it appears that Plaintiff asserts that Defendants

violated his substantive due process rights under the Fifth and Fourteenth Amendments by failing to enforce Anderson's stop-work order to prevent his neighbor's encroachment onto his property. Accepting Plaintiff's allegations as true for purposes of this motion, Defendant Anderson is nevertheless entitled to qualified immunity. "It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994).

In *Gagliardi,* the Second Circuit held that the plaintiffs had "[n]o due process right" to "demand that the Municipal Defendants enforce the zoning laws." *Id.* While the court assumed, without deciding, that a property owner could have a "protected interest in the enforcement of the zoning laws against an adjoining property," it nonetheless ruled that the plaintiffs had not established an entitlement to the enforcement decisions they sought in that case, because municipal officials retain discretion over enforcement decisions generally, and because the specific land-use regulations at issue provided the officials with broad discretion. *Id.*

"In the wake of *Gagliardi,* the lower courts have found that there is no due process right to rigorous enforcement of land-use laws." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 704 (S.D.N.Y. 2011) ("Plaintiffs have failed to plead or otherwise demonstrate that the law was clearly established . . . that there existed a due process right requiring public officials to enforce land-use regulations against another property owner."); *see also Nemeth v. Vill. of Hancock*, No. 3:10cv1161, 2011 WL 56063, at *4 (N.D.N.Y. Jan. 7, 2011) ("Simply stated, Plaintiffs have no constitutionally protected property interest in the 'benefit' of a Zoning Code violation being issued by the Defendants against the Kuehns'

use of the their property."); *Schwasnick v. Fields*, No. 08cv4759(JS) (ARL), 2010 WL 2679935, at * 7 (E.D.N.Y. June 30, 2010) ("Plaintiffs are not entitled to enforce the Town Code against their neighbors.").[4]

In *Wiltzius v. Town of New Milford*, 453 F. Supp. 2d 421, 435 (D. Conn. 2006), the court concluded that zoning officials' approval of a land-use expansion project was "clearly prohibited under state law," but nevertheless found that the zoning board officials were entitled to qualified immunity because "there is no Circuit or Supreme Court precedent that would place Board members on notice that their actions, in granting such an extension or enlargement, would violate an adjoining property [owner's] substantive due process rights."  Plaintiff has not pled any facts to suggest any recognized Fourteenth Amendment obligation that required Defendant Anderson to stop the encroachment onto Plaintiff's land.  Even if Defendant Anderson's actions were not in conformity with state law, such a failure to enforce land-use requirements would not state a claim for a clearly established constitutional violation.  Accordingly, Defendant Anderson is entitled to qualified immunity.

---

[4] The entitlement of individual Defendants to qualified immunity does not preclude *Monell* liability against the City, *see Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008) ("[A] municipality is liable for even its good faith constitutional violations presuming that the municipality has a policy that causes those violations."), but, as discussed above, the Complaint fails to plausibly allege any denial of constitutional rights arising from the failure to enforce a stop-work order or that there was any municipal custom or policy resulting in the alleged deprivation.  Accordingly, Plaintiff's *Monell* claim against the City must be dismissed as well.

### B.       Remaining State Law Claim

Where, as here, a federal court has dismissed before trial the only basis for federal jurisdiction, it has discretion under 28 U.S.C. § 1367(c) to either retain or decline jurisdiction over any remaining state law claims.  *See Osborn v. Haley*, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction.").  A "federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7.

Weighing these factors, the Court concludes that this matter should be remanded back to state court.  Dismissal of the federal claims has occurred at an early stage of litigation and the remaining claims involve an action against a state government entity and employee.  Thus, there will be no inefficiency or inconvenience associated, and having a state court adjudicate claims against a municipal entity and its employee promotes comity.  Additionally, "the state court was the forum of plaintiff's choice, an interest that is entitled to some consideration." *de Hernandez v. Lutheran Med. Ctr.*, No. 01-CV-6730JG, 2002 WL 31102638, at *2 (E.D.N.Y. Sept. 11, 2002).

Further, the state court has already adjudicated five lawsuits brought by Plaintiff related to this incident.  The last two of these lawsuits were dismissed on the basis of issue preclusion and whether this suit should be dismissed on that basis as well may involve the application of an unsettled issue of state law, further supporting remand.[5]  Accordingly, the remaining state law claim will be remanded to the state court.  *See Carnegie-Mellon Univ.*, 484 U.S. at 357 (1988) ("We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.").

_____

[5] As this Court discussed in the *Lagoudis* Motion to Dismiss Ruling, at 2, Plaintiff's fourth action brought in state court was dismissed because Plaintiff failed to establish "with credible evidence" that he owned 1843 North Broad Street and therefore lacked standing to pursue claims related to the property.  *See Henderson v. Lagoudis*, 35201, 2014 WL 631121, at *1 (Conn. App. Ct. Feb. 25, 2014).  Plaintiff thereafter commenced a fifth state court action, presenting additional evidence that he was the owner of 1843 North Broad Street, which was also dismissed on the basis that Plaintiff "did not have standing," because he "did not own or exclusively possess the property he alleges the defendants trespassed on in 2009."  *Id.* at *3.  This Court has already held that Plaintiff is precluded from relitigating his ownership of 1843 North Broad Street and his lack of standing to pursue claims for trespass, nuisance, and theft.  *See Lagoudis* Motion to Dismiss Ruling at 5.  While the fact that Plaintiff did not own the property may not necessarily preclude a § 1983 claim, *see Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999), it may preclude his claim for negligence here, *see e.g.*, *Wild v. Hayes*, 68 A.D.3d 1412, 1414 (N.Y. App. Div. 2009) ("[P]laintiff lacked standing to sue for negligence, trespass or conversion inasmuch as plaintiff did not own, or have possessory rights to, the property when any such causes of action accrued. . . .").  The parties have not addressed this issue, however, and the Court has not been able to find any cases under Connecticut law addressing this issue.  Accordingly, the determination of this issue is best left to the Connecticut courts, which have already addressed Plaintiff's ownership of the property and its effect on his standing to pursue claims related to it under state law.

**III.      Conclusion**

For the reasons discussed above, Defendants' Motion [Doc. # 23] for Judgment on the Pleadings is GRANTED on the § 1983 claim and the remaining negligence claim is REMANDED to the Superior Court for the Judicial District of New London at New London.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of March, 2014.